UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEMARK DIXON,

                            Petitioner,

      -v-

UNITED STATES OF AMERICA,

                         Respondent.

Case No. 14-CV-960 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Demark Dixon
Goldens Bridge, NY
*Pro se Petitioner*

Jonathan James Ross
Assistant United States Attorney
Southern District of New York
New York, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

       Pro se Petitioner Demark Dixon ("Petitioner") filed a Petition in February 2014 for a writ of error coram nobis relating to his December 1997 bank robbery conviction. Petitioner alleges that he is actually innocent and is suffering continued harm, namely an inability to find gainful employment, as a result of his conviction. He requests that the Court appoint a forensic analyst to review certain evidence, and vacate his conviction. Petitioner filed the instant Motion for Summary Judgment in July 2014, seeking an order summarily granting his Petition. The Government has requested that the Court dismiss the Petition. For the reasons stated herein, Petitioner's Motion is denied, and the Petition is dismissed.

## I.  BACKGROUND

### A.  Factual Background

On December 4, 1997, following a jury trial before Judge Charles L. Brieant in the Southern District of New York, Petitioner was convicted of (i) Conspiracy to Commit Bank Robbery, in violation of Title 18, United States Code, Section 371; (ii) Bank Robbery, in violation of Title 18, United States Code, Sections 2113(a) and (d); and (iii) Possession of a Firearm During the Commission of a Crime of Violence, in violation of Title 18, United States Code, Section 924(c).  (*See* Pet. for Writ of Error Coram Nobis ("Pet.") 1 (Dkt. No. 2)); Mem. of Law of the United States of Am. in Opp'n to Pet'r's Writ of Error Coram Nobis ("Gov't Mem.") 2 (Dkt. No. 14).)  Petitioner's conviction was based partially on a surveillance video purportedly showing Petitioner at the bank at issue prior to the robbery, and the testimony of two co-conspirators.  (Pet. 2; Gov't Mem. 2.)  On February 26, 1998, Petitioner was sentenced to 147 months' imprisonment.  (Pet. 1; Gov't Mem. 2.)  On December 23, 1998, the Second Circuit affirmed Petitioner's conviction, noting "the strong evidence of [Petitioner's] guilt."  (Gov't Mem. 2 (citing *United States v. Rahman*, No. 98-CV-1054, 1998 WL 907042, at *2 (2d Cir. Dec. 23, 1998).)  Petitioner was ultimately imprisoned until June 2010, and was subject to supervised release until December 9, 2013.  (*See* Pet. 1; *id.* Exs. A (Notice of Discharge), H, at 2 (Letter from Nicole Zeichner, Esq., to Judge Loretta A. Preska (Dec. 21, 2011) ("Pet'r's Dec. 21, 2011 Letter").)[1]

After his release from prison, Petitioner spent a period of time at a half-way house in Bronx, NY, (Resp. Mot. to Court Order Arguing Timely Filed Writ of Error Coram Nobis

---

[1] Petitioner attached several exhibits to a filing containing both his Petition and his "Application for Counsel & Forensic Photogrammetry Expert."  (*See* Dkt. No. 2.)  The Court will refer to those exhibits as part of the Petition.

("Pet'r's Resp.") 2 (Dkt. No. 13)), and, since November 21, 2013, he has resided at the Help

Creston Avenue shelter in Bronx, NY, (Pet'r's App. To Obtain Counsel & Forensic

Photogrammetry Expert ("Pet'r's App.") 1 (Dkt No. 2); *id.* at A (Letter from Selena Mills, Case

Manager (Jan. 16, 2014))).[2]  While Petitioner was employed for almost a year and a half as a car

detailer and transporter after his release from prison, (Pet'r's Dec. 21, 2011 Letter at 1–2),

Petitioner alleges that he has been denied certain other employment opportunities due to his

status as a convicted felon, (Pet. 3).  In particular, Petitioner alleges that on November 15, 2011,

"Halls Automotive" rescinded a job offer due to Petitioner's conviction, that on January 16,

2014, Petitioner was "removed" from "Access-A-[R]ide training class," through which Petitioner

presumably sought to become a bus driver, after New York State learned of his conviction, and

that, more generally, "no real trucking companies will . . . train" Petitioner such that he can get a

"Class-A" license until he is "ten years clear from [his] federal conviction."  (*Id.*)[3]

    B.  Procedural History

    Prior to filing the instant Petition, Petitioner levied a number of challenges to his

conviction, arguing that he received ineffective assistance of counsel, that he was not the

individual appearing in the surveillance video, and that access to an expert witness would have

allowed him to prove that he was not the person in the surveillance video.  (*See* Pet'r's Resp. 1–

2; Gov't Mem. 3.)  On March 15, 1999, Petitioner filed a motion for habeas relief pursuant to 22

U.S.C. § 2255.  *See Dixon v. United States*, No. 99-CV-1876 (S.D.N.Y. Apr. 30, 1999) ("*Dixon*

---

[2] Petitioner appears to have spent over a year living in a "single room occupancy" home in the Bronx while he was employed.  (*See* Pet. Ex. H, at 2.)

[3] Nicole Zeichner, Esq., in a letter attached to the Petition as an exhibit, refers to Halls Automotive as Hall Automotive.  (Pet'r's Dec. 21, 2011 Letter at 2–3.)  The Court will refer to the company as Halls Automotive, per the Petition.  (Pet. 3.)

*I*"), at 1.[4]  (*See also* Gov't Mem. 3.)  Judge Brieant denied the petition on April 30, 1999, finding

the claim "essentially frivolous" given "[t]he proof of guilt in the case was overwhelming" and

"[t]he conduct of counsel throughout was objectively reasonable."  *Dixon I*, at 2–3.  On

September 13, 1999, Petitioner filed a motion, purportedly under Federal Rule of Civil Procedure

60(b), making substantially the same arguments.  *Dixon v. United States*, No. 99-CV-1876

(S.D.N.Y. Sept. 22, 1999) ("*Dixon II*"), at 1–2.  (*See also* Gov't Mem. 3.)  Judge Brieant again

denied Petitioner's motion on September 22, 1999, noting that "[t]he identity of the Defendant

was . . . not much of an issue, because the Government had . . . two cooperating individuals who

. . . confirm[ed] [Petitioner's] participation in the bank robbery," that the surveillance video "was

in no way critical to the Government's case," and that "[o]rdinarily, expert testimony is neither

available nor required to supplement the jurors' own identification of a defendant by comparing

him with a picture, as was done in this case."  *Dixon II*, at 1–2.

Over the next eight years, Petitioner applied to the Second Circuit on four occasions for

leave to file a successive habeas petition under 28 U.S.C. § 2255(h).  (*See* Gov't Mem. 4.)

Petitioner's applications were all denied because they did not contain newly discovered evidence

that would establish Petitioner's innocence, and were not based on a new rule of constitutional

law made retroactive to cases on collateral review, as required by the statute.  (*See id*.)  *See also*

*Dixon v. Killian*, Nos. 07-CV-3612, 07-CV-4215 (2d Cir. Nov. 2, 2007); *Dixon v. Killian*, No.

07-CV-3612 (2d Cir. Sept. 26, 2007); *Dixon v. United States*, No. 01-CV-3552 (2d Cir. May 22,

---

[4] The decision resolving this Habeas Petition and Judge Brieant's subsequent decision
denying another post-conviction motion for relief are unavailable on Westlaw or LexisNexis.
The Government attached copies to the Declaration of Daniel P. Filor ("Filor Declaration").  (*See*
Decl. of Daniel P. Filor ("Filor Decl.") Exs. B (Apr. 30, 1999 Decision) & C (Sept. 22, 2009
Decision) (Dkt. No. 15).)

2001); *Dixon v. United States*, No. 00-CV-3595 (2d Cir. Aug. 29, 2000).[5]  Additionally, in

October 2004, Petitioner filed a Freedom of Information Request with the Federal Bureau of

Investigation, seeking copies of the surveillance video and related photographs that were used at

trial.  *See Dixon v. Admin. Appeal Dep't Office of Info. & Privacy*, No. 06-CV-6069, 2008 WL

216304, at *1 (S.D.N.Y. Jan. 22, 2008) (adopting Report and Recommendation).  (*See also*

Gov't Mem. 4.)  The Government provided the requested materials in November 2006, and

Judge Lewis A. Kaplan dismissed the lawsuit in which Petitioner sought those materials on

January 22, 2008, with prejudice, after Petitioner sought to "expand the scope of the relief that he

request[ed]."  *Dixon*, 2008 WL 216304, at *1.  (*See also* Pet'r's Resp. 2; Gov't Mem. 4.)[6]  The

Second Circuit affirmed the dismissal on July 8, 2009.  *See Dixon v. Admin. Appeal Dep't Office

of Info. & Privacy*, 336 F. App'x 98, 99 (2d Cir. 2009).  (*See also* Gov't Mem. 4.)

Petitioner filed his Petition for Writ of Error Coram Nobis, together with an "Application

to Obtain Counsel & Forensic Photogrammetry Expert," on February 11, 2014.  (*See* Pet.; Pet'r's

App.)  On April 30, 2014, Petitioner filed a separate request for appointed counsel.  (*See* Dkt.

---

[5] The Second Circuit also denied Petitioner's motion to proceed in forma pauperis, for appointment of counsel, and for a certificate of appealability, on November 7, 2007.  *See Dixon v. Killian*, Nos. 07-CV-3612, 07-CV-4215 (2d Cir. Nov. 7, 2007).  The Government characterizes this decision as a fifth denial of leave to file a successive § 2255 habeas petition, (Gov't Mem. 3), but the decision makes no mention of such application.

The Second Circuit decisions at issue are unavailable on Westlaw or LexisNexis.  The Government attached copies of the decisions to the Filor Declaration.  (*See* Filor Decl. Exs. F–J.)

[6] For example, on November 21, 2007, Petitioner filed a motion requesting that the district court "authorize an FBI laboratory photogrammetry analysis" of photographs from his criminal case.  (*See* Filor Decl. Ex. D.)

Additionally, Petitioner alleges that his request was "denied" on December 28, 2007. (Pet'r's Resp. 2).  However, this is the date on which Magistrate Judge Michael H. Dolinger issued his Report and Recommendation to Judge Kaplan, who then dismissed the action almost a month later.  (*See* Filor Decl. Ex. E (Report and Recommendation).)

No. 7.)[7]  On April 30, 2014, the Court issued an Order directing the United States Attorney for the Southern District of New York to respond to the Petition within 60 days, and denying Petitioner's request for pro bono counsel.  (*See* Dkt. No. 8.)  Less than a month later, on May 27, 2014, Petitioner filed a "Motion To Object To Any Future Extension of Time Request To Answer," (Dkt. No. 9), which the Court denied on ripeness grounds the following day, (*see* Dkt. No. 10).  On July 7, 2014, 68 days after the Court's initial Order, Petitioner filed the instant Motion for Summary Judgment, requesting that the Court grant Petitioner's Motion because the Government had "fail[ed] to answer" the Petition.  (*See* Pet'r's Mot. for Summ. J. ("Mot.") 1 (Dkt. No. 11).)  The Court memo-endorsed Petitioner's Motion on July 9, 2014, ordering the Government to respond by July 31, 2014, and directing Petitioner to explain why the Petition should not be dismissed as untimely, citing *Sahin v. United States*, No. 13-CV-358, 2014 WL 2177088, at *2 (N.D.N.Y. May 22, 2014).  (*See* Dkt. No. 12.)  Petitioner filed a "Response Motion," addressing the Court's Order, on July 30, 2014.  (*See* Pet'r's Resp.)  The Government filed its Opposition Memorandum ("Opposition") and supporting Declaration, responding to Petitioner's Motion and asking that his Petition for coram nobis relief be dismissed, on July 31, 2014.  (*See* Gov't Mem.; Decl. of Daniel P. Filor ("Filor Decl.") (Dkt. No. 15).)  Petitioner filed his Reply, styled as a "Motion Reply To Defendant's Opposition To Petitioner's Writ of Error Coram Nobis," on August 6, 2014.  (Pet'r's Mot. Reply to Defs.' Opp'n to Pet'r's Writ of Error Coram Nobis ("Reply") (Dkt. No. 17).)[8]  Petitioner also submitted an Ex Parte Application for

---

[7] Petitioner had also filed a separate "Affidavit for Expert & Counsel to Be Appointed" on April 7, 2014, requesting pro bono counsel and the appointment of an expert to examine "bank robbery surveillance material."  (Dkt. No. 5.)

[8] Petitioner also filed a "Motion for Leave to Reply to Defendant's Answer" on August 4, 2014, prior to filing his Reply.  (Dkt. No. 16.)

6

the Court to "grant or [ ] make a ruling on" the Petition, dated September 7, 2014, which the

Court memo-endorsed the next day, noting that "[t]he matter is being considered" and that

"[t]here is no reason [the] submission cannot be publicly filed."  (Dkt. No. 18.)[9]

## II.  DISCUSSION

### A.  Petitioner's Motion for Summary Judgment

As an initial matter, Petitioner is correct that the Government failed to respond to the

Petition within the sixty days afforded by the Court's April 30, 2014 Order.  (*See* Dkt. No. 8).[10]

The Government filed its Opposition on July 31, 2014, (Dkt. No. 14), over ninety days after the

Court's Order, and likely in response to the Court's July 9, 2014 memo endorsement of

Petitioner's Motion, which ordered the Government to respond by that day, (*see* Dkt. No. 12).[11]

In its Opposition, the Government argues that a motion for summary judgment is

procedurally unavailable in an action for coram nobis relief.   A petition for a writ of error coram

nobis, the Government asserts, "'is a step in the criminal case and not, like habeas corpus relief

where relief is sought in a separate case and record, the beginning of a separate criminal

proceeding.'"  (*See* Gov't Mem. 5 n.1 (quoting *United States v. Morgan*, 346 U.S. 502, 505 n.4

(1954) and citing *United States v. Denedo*, 556 U.S. 904, 913 (2009)).)  In other words, the

Government contends, a petition for a writ of error coram nobis is part of the underlying criminal

---

[9] Petitioner alleged in his Ex Parte Application that he "has a pending writ in the EDNY under 14-CV-1223," but that case appears to concern another inmate, Guillermo Perez.  (*See* Dkt. No. 18; Dkt. for 14-CV-1223.)

[10] Federal Rule of Civil Procedure 12(a)(2) also requires the United States to file an answer within 60 days of service.

[11] The Court assumes that the Government intended its Opposition to also serve as an opposition to Petitioner's Motion because, in addition to addressing the merits of the Petition, it also addressed the appropriateness of the Motion in a footnote.  (*See* Gov't Mem. 5 n.1.)

case.  (*See id.* (citing *United States v. Gernie*, 228 F. Supp. 329, 332 (S.D.N.Y. 1964) (explaining

that a criminal case "is not considered moot merely because sentence has been completed, and

the court has power to vacate and set aside an illegal conviction and sentence if the proceedings

are well-grounded")).)  Therefore, because Petitioner filed his Motion for Summary Judgment

under Federal Rule of Civil Procedure 56, (Mot. 1), which does not apply to criminal cases, and

because there is no analogous procedure for criminal cases, *see United States. v. Milani*, 739 F.

Supp. 216, 218 (S.D.N.Y. 1990) ("In a criminal case[,] there is no analogue to civil summary

judgment."), the Government argues that Petitioner's Motion should be denied as improper, (*see*

Gov't Mem. 5 n.1.)

    While summary judgment may be improper under the Federal Rules in coram nobis

cases, giving Petitioner the benefit of the doubt and treating the Petition as if it were a separate

civil matter, the Court construes Petitioner's Motion as seeking a default judgment.  *See Green v.

Hood*, No. 09-CV-112, 2010 WL 1257890, at *1 (D. Mont. Feb. 23, 2010), *adopted by* 2010 WL

1226184 (D. Mont. Mar. 26, 2010) (construing a pro se plaintiff's motion for summary judgment

for failure to respond to the complaint as a motion for default judgment).  Construing Petitioner's

Motion in this way, and applying by analogy the standards applicable to default judgments in

habeas cases, the Court notes that it is well within its discretion to disregard, without condoning,

the one-month delay in the Government's response, and to proceed to evaluate the merits of the

Petition.  *See Cohen v. United States.*, Nos. 07-CV-7397, 01-CR-1208, 2013 WL 5882923, at *8

(S.D.N.Y. Oct. 29, 2013) ("It is established law in the Second Circuit that the Government's

failure to file a timely response does not entitle a habeas petitioner to a default."); *Faeth v.

Conway*, No. 03-CV-924, 2008 WL 10629972, at *1 (W.D.N.Y. Feb. 14, 2008) ("Even though

[the] respondent technically was in default because he failed to file his responsive pleadings on

time, relevant Second Circuit precedent precludes the Court from granting a habeas petitioner's motion for default judgment based on [the] respondent's failure to file his answer on time." (citing *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984)); *Orraca v. Walker*, No. 00-CV-5503, 2003 WL 1936139, at *1 (S.D.N.Y. Apr. 22, 2003) (denying, in a habeas case, a motion for a default judgment that was based on the "respondent's failure to respond as directed in the [c]ourt's order" which amounted to a delay of just over two months); *Harris v. Hollins*, No. 95-CV-4376, 1997 WL 5909, at *3 (S.D.N.Y. Jan. 7, 1997) (declining to issue default judgment after multi-month delay "given the extraordinary relief that a writ of habeas corpus carries with it"); *Andrews v. Kelly,* No. 86-CV-908, 1987 WL 16157, at *2 (S.D.N.Y. Aug. 11, 1987) (noting that it is "well within the discretion of a federal district court to . . . disregard any delay in answering" a habeas petition); *cf. Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993) ("The dispositions of motions for entries of default and default judgments . . . are left to the sound discretion of a district court."); *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 319 (2d Cir. 1986) ("[D]istrict courts regularly exercise their discretion to deny technically valid motions for default.").[12]   In fact, courts in the Second Circuit have made clear that "a district court should

---

[12] Cases concerning habeas relief under 28 U.S.C. § 2255 are instructive in the coram nobis context because the "standards applied in federal coram nobis are similar" to those applied under § 2255. *United States v. Travers*, 514 F.2d 1171, 1173 n.1 (2d Cir. 1974). Indeed, "[b]ecause of the similarities between coram nobis proceedings and § 2255 proceedings, the § 2255 procedure often is applied by analogy in coram nobis cases." *Fleming v. United States*, 146 F.3d 88, 90 n.2 (2d Cir. 1998) (internal quotation marks omitted). The Court recognizes that the concerns expressed in *Bermudez*, 733 F.2d 18, the leading Second Circuit authority on default judgments in habeas cases, are less salient in the coram nobis context because a petitioner seeking coram nobis relief will have already served his sentence. *See id.* at 21 (noting that granting default judgment in habeas context would cause the "public at large . . . to suffer, by bearing the risk of releasing prisoners that in all likelihood were duly convicted, or the costly process of retrying them"). The *Bermudez* court indicated, however, that "default[s] in habeas proceedings" do not differ in any significant way from defaults "sought against the United States," because in both cases "the taxpayers at large would

not grant a default judgment [for a] petition for habeas corpus," or, in this case, a writ of error

coram nobis, "without reaching the merits of the claim." *Paris v. Barkley*, No. 96-CV-1962,

1997 WL 458457, at *1 (N.D.N.Y. Aug. 5, 1997); *cf. Enron Oil Corp*, 10 F.3d at 95–96

(detailing the Second Circuit's preference for "resolving disputes on the merits" and noting that

"defaults are generally disfavored and are reserved for rare occasions").  The preference for

adjudication of such claims on the merits is consistent with Federal Rule of Civil Procedure

55(d), which provides that "default judgment may be entered against the United States, its

officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that

satisfies the court."  *See Bermudez*, 733 F.2d at 21–22 (noting that default judgment in habeas

proceedings "differs from default in other civil cases, except those in which judgment is sought

against the United States"); *Jackson v. Kuhlman*, No. 94-CV-5934, 1996 WL 1088202, at *1

(E.D.N.Y. Oct. 8, 1996) (declining to issue default judgment in a habeas case, recognizing that

"the prohibition of granting procedural default in habeas cases is parallel to the prohibition of

granting default against the government in a civil claim against the United States," in that "a

default judgment in such cases amount[s] to giving a plaintiff a 'windfall' at the public

expense").

    As discussed below, the Court finds that the Petition is not meritorious, and therefore

Petitioner's Motion for Summary Judgment is properly denied.  *See Parafan-Homen v. United

States*, No. 03-CV-5427, 2012 WL 4472262, at *21 (E.D.N.Y. Sept. 25, 2012) (denying, in a

habeas case, the petitioner's motion for a default or summary judgment based on the

government's failure to respond to the petitioner's habeas petition by the court-ordered deadline

---

have to bear the cost of a judgment that comes as a windfall to the individual claimant."  *Id.* at
21–22 (citation and internal quotation marks omitted).  The same concern is relevant here.

because it did not meet the standard under Rule 55(d)); *see also Smith ex. rel. Smith v. Islamic Emirate of Afg.*, 262 F. Supp. 2d 217, 224 (S.D.N.Y. 2003) (noting that the burden to be met by a party seeking a default judgment against the United States is "a legally sufficient evidentiary basis for a reasonable jury to find for [that party]"); *cf. North v. Rooney*, 03-CV-1811, 2003 WL 21432590, at *4 (D.N.J. June 18, 2003) ("Courts have consistently held that Rule 55 precludes entry of default judgment against the government simply based on a failure to file an answer or responsive pleading within the time prescribed by the court rules.").[13]  The Court therefore declines to enter default judgment here.

   B.  Standard of Review

       The writ of coram nobis is a limited and exceptional remedy.  *See Nicks v. United States*, 955 F.2d 161, 166–67 (2d Cir. 1992).  It "is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus."  *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998).  "[T]he power of the [C]ourt . . . to vacate . . . judgments for errors of fact exist[s] . . . [only] in those cases where the errors were of the most fundamental character; that is, such as rendered the proceeding itself irregular and invalid."  *United States v. Mayer*, 235 U.S. 55, 69 (1914); *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (same); *see also Carlisle v. United States*, 517 U.S. 416, 429 (1997) (noting that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate" (internal quotation marks omitted)).  Generally, therefore, coram nobis relief "after final judgment and exhaustion or waiver of any statutory right of review should be allowed . . .

---

[13] In 2007, Rule 55(e) was renumbered as Rule 55(d).  *See* Supplementary Note, Fed. R. Civ. P. 55 (2009).

only under circumstances compelling such action to achieve justice," *United States v. Morgan*, 346 U.S. 502, 511 (1954), and "where extraordinary circumstances are present," *Nicks,* 955 F.2d at 167.  Consistent with these principles, the Second Circuit has articulated a three-pronged standard for when coram nobis relief is appropriate: "1) there are circumstances compelling such action to achieve justice; 2) sound reasons exist for failure to seek appropriate earlier relief; and 3) the petitioner continues to suffer legal consequences from his [or her] conviction that may be remedied by granting of the writ."  *Foont*, 93 F.3d at 79 (quoting *Nicks*, 955 F.2d at 167 and *Morgan*, 346 U.S. at 511) (citations, alteration, and internal quotation marks omitted).

In determining whether to grant coram nobis relief, the prior proceedings are presumed to have been conducted correctly, and it is Petitioner's burden to prove otherwise.  *See Morgan,* 346 U.S. at 512 ("It is presumed [that] the proceedings were correct and the burden rests on the accused to show otherwise."); *Nicks*, 955 F.2d at 167 ("[W]e must presume the proceedings were correct.  The burden of showing otherwise rests on the petitioner.").  Given this presumption, the preference for the finality of adjudged convictions, and the reservation of coram nobis relief for extraordinary cases, Petitioner's burden in seeking such relief is quite high.  *See United States v. Akinsade*, 686 F.3d 248, 261 (4th Cir. 2012) ("The burden of establishing the requirements for coram nobis relief is a very substantial one, described by some jurists as exceeding that of an ordinary habeas petitioner." (italics omitted)); *United States v. Hernandez*, 94 F.3d 606, 613 n.5 (10th Cir. 1996) ("[T]he availability of a writ of coram nobis is extremely circumscribed . . . ."); *cf. United States v. Wolfson*, 558 F.2d 59, 66 (2d Cir. 1977) (noting that "the ordinary presumption that a lawyer is competent to protect his client's confidential interests before the grand jury is even stronger in a coram nobis proceeding where the petitioner bears the burden of overcoming the presumption of regularity in the challenged proceedings" (citation omitted)).

C.  Analysis

Petitioner alleges that the Government is in possession of "solid evidence," namely surveillance video and related photos, "that will demonstrate [P]etitioner['s] actual factual innocence" provided that it is "analy[zed] by a[n] expert," and that his "trial counsel rendered ineffective assistance of counsel before, during[,] and after trial."  (Pet. 2.)  Because the surveillance video was not presented to the jury with a "written report from a forensic photogrammetry analysis expert," Petitioner alleges that the jury erred in identifying Petitioner in the video.  (*Id.*)

As a result of his conviction, Petitioner alleges that he is suffering "much harm," namely an inability to obtain steady employment.  (*Id.* at 3.)  He also maintains that he owes approximately $200,000 in restitution.  (*Id.*)  Petitioner therefore requests that the Court appoint a "forensic photo expert to examine the surveillance material" presented at trial, which he alleges will "prove [P]etitioner['s] actual[,] factual innocence," and that the Court also "set aside [and] vacate [Petitioner's] conviction."  (Pet. 4.)[14]

1.  Timeliness of Petition

As indicated above, in order to be eligible for coram nobis relief, Petitioner must prove "1) there are circumstances compelling such action to achieve justice; 2) sound reasons exist for failure to seek appropriate earlier relief; and 3) the petitioner continues to suffer legal consequences from his [or her] conviction that may be remedied by granting of the writ."  *Foont*, 93 F.3d at 79 (quoting *Nicks*, 955 F.2d at 167 and *Morgan*, 346 U.S. at 511) (citations, alteration, and internal quotation marks omitted).  The Court will begin its analysis with the second prong

---

[14] As discussed above, Petitioner also attached a separate request that the Court "assign . . . counsel [and an] investigative forensic photogrammetry expert."  (Pet'r's App. 1.)

13

of this standard—the timeliness of the Petition—because it is a threshold procedural hurdle to obtaining coram nobis relief. *See United States v. Foont*, 901 F. Supp. 729, 732–33 (S.D.N.Y. 1995), *aff'd*, 93 F.3d 76 (1996) (noting that the timeliness of a coram nobis petition was "the threshold issue" the court had to resolve on remand prior to reaching the underlying merits of the claim); *id.* at 733 (indicating that while the first prong of the *Nicks* standard—fundamental error—is substantive, the other two are procedural and "relate more to the standing of the petitioner to invoke the writ, whatever the underlying merits may be").

"[A]lthough coram nobis relief has no specific statute of limitations, such relief 'may be barred by the passage of time,'" depending on the facts and circumstances of the individual case. *Sahin*, 2014 WL 2177088, at *2 (italics omitted) (quoting *Foont*, 93 F.3d at 79). "Therefore, unless the petitioner can demonstrate sufficient justification for his failure to seek relief at an earlier time, the writ is unavailable and his petition for coram nobis should be dismissed." *Id.* (italics and internal quotation marks omitted); *see also Nicks*, 955 F.2d at 167–68 (describing the Court's task as to "determine whether [the petitioner] had sound reasons for his lengthy delay in seeking coram nobis relief" (italics omitted)).

While the Government does not address the timeliness of the Petition in its Opposition, the Court, in its July 9, 2014 memo endorsement, asked the Petitioner explain why the Petition should not be dismissed as untimely. (*See* Dkt. No. 12 (citing *Sahin*, 2014 WL 2177088, at *2 (finding coram nobis petition untimely because of eight-year delay in pursuing claim)).) Petitioner has made several attempts "over [the] 13[ ] years of [his] incarceration," (Pet'r's Resp. 1), to challenge his conviction, including filing a § 2255 petition and a motion purportedly under Rule 60(b), and making several applications to the Second Circuit to file a successive

§ 2255 petition.[15]  While Petitioner maintains that he "demonstrated due[ ]diligence" in pursuing

his claim, (*id.*), over four years passed between when Petitioner's last application for relief was

---

[15] The Court notes that Petitioner's prior filings suggest that he may be procedurally barred from filing this Petition.  In the context of successive § 2255 applications, the Supreme Court has held that "[c]ontrolling weight may be given to denial of a prior application for . . . § 2255 relief . . . if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application." *Sanders v. United States*, 373 U.S. 1, 15 (1963).  Because the "standards applied in federal coram nobis are similar" to those applied under § 2255, *Travers*, 514 F.2d at 1173 n.1, and because "the § 2255 procedure often is applied by analogy in coram nobis cases," *Fleming*, 146 F.3d at 90 n.2 (internal quotation marks omitted), the *Sanders* analytical framework is instructive in the instant case, *see Durrani v. United States,* 294 F. Supp. 2d 204, 209–10 (D. Conn. 2003), *aff'd*, 115 F. App'x 500 (2d Cir. 2004) (noting that "[p]rior to reaching the merits of the coram nobis petition, the court must determine whether, in light of [the petitioner's] prior habeas corpus petition, which raises grounds identical to those in the current petition, the petition is properly before the court," and that "[i]t is appropriate to use the same analytical framework when ruling on the propriety of [a] . . . coram nobis petition as when analyzing successive habeas corpus petitions."); *see also Klein v. United States*, 880 F.2d 250, 254 n.1 (10th Cir. 1989) ("[C]oram nobis relief is not available to litigate issues already litigated."); *Polizzi v. United States*, 550 F.2d 1133, 1135–36 (9th Cir. 1976) ("Although principles of res judicata do not bar a prisoner from relitigating on . . . coram nobis issues raised in the original appeal, a district court may refuse to entertain a repetitive petition . . . . previously determined on the merits." (italics added) (internal quotation marks omitted)); *Sun v. United States,* 342 F. Supp. 2d 1120, 1126 (N.D. Ga. 2004), *aff'd*, 151 F. App'x 860 (11th Cir. 2005) ("A writ of error coram nobis is only appropriate when claims could not have been raised by direct appeal, or the grounds to attack the conviction become known after a completed sentence when § 2255 relief is unavailable.").

Petitioner previously filed his § 2255 and Rule 60(b) motions on substantially the same grounds as those of the instant Petition: ineffective assistance of counsel based on the alleged need for expert analysis of the surveillance video and related photographs.  (*See* Pet. 2 (alleging that "trial counsel rendered ineffective assistance of counsel" and that if the surveillance video was "analy[zed] by a[n] expert," it would "demonstrate [P]etitioner[']s actual factual innocence"); Filor Decl. Exs. B, at 1–2 (*Dixon I* Order denying § 2255 petition filed on the basis of "ineffective assistance of counsel" and the "failure to have an expert witness at the trial to review the photographs"), C, at 1 (*Dixon II* Order denying Rule 60(b) motion filed because Petitioner "was told not to testify at his trial by his trial attorney" and "needed expert witness testimony" to prove he was not the individual in the surveillance video)); *see also id.* Ex. E, at 3 (Report and Recommendation, characterizing Petitioner's motions as arguing that "he was in fact not the person portrayed in the videotape and photographs, . . . that his attorney had been ineffective . . . . , [and] that he had needed an expert to testify at trial that he was not the person shown in the videotape and in the derivative still photographs").)  Because both of these motions were denied on the merits, *see, e.g., id.* Ex. C, at 3 ("The motion is denied for want of merit."), and the "ends of justice" may not require reaching the merits of the Petition, *see Durrani*, 294 F.

denied by Judge Kaplan, and when Petitioner filed his coram nobis Petition, (*see id.* 2; Pet.).

Courts in the Second Circuit have held that, if unjustified, a delay of this length is sufficient to

warrant dismissing a petition for coram nobis relief.  *See Rodriguez v. United States*, No. 98-CR-

764, 2012 WL 6082477, at *10 (S.D.N.Y. Dec. 4, 2012) (more than two-year delay); *Ejekwu v.

United States*, No. 02-CV-699, 2005 WL 3050286, at *3 (E.D.N.Y. Nov. 14, 2005) (more than

two-year delay); *Cisse v. United States*, 330 F. Supp. 2d 336, 344 (S.D.N.Y. 2004) (one-year

delay); *Mastrogiacomo v. United States*, No. 90-CR-565, 2001 WL 799741, at *2 (S.D.N.Y. July

16, 2001) (three-year delay); *see also United States v. Abramian,* No. 02-CR-945, 2014 WL

4702584, at *4 (C.D. Cal. Sept. 22, 2014) (more than two-year delay); *United States v. Rankin*, 1

F. Supp. 2d 445, 454 (E.D. Pa. 1998) (more than two-year delay).  Petitioner contends that any

delay is attributable to his inability "to afford a lawyer and expert witness" while incarcerated,

"the Court's denial/refusal to provide the proper 'tools' for [P]etitioner to prove his case," and

the fact that he did not "know[] that . . . [his] conviction was going to cause [him] to []suffer

from . . . continuing legal consequences . . . 16 years later."  (Pet'r's Resp. 2–3.)[16]  Petitioner also

---

Supp. 2d at 211–12 (holding that the petitioner was not permitted to relitigate his claim "in the absence of credible new evidence or a change in law"); *id.* Ex. G (Second Circuit's denial of application for successive § 2255 motion because "the motion [was] not based on either newly discovered evidence or a new rule of constitutional law made retroactive to cases on collateral review"), the Petition may be procedurally barred under *Sanders*.  However, given Petitioner's pro se status, and because the Government did not make this argument in its Opposition to the Petition, the Court declines to reach this conclusion sua sponte.  *See Washington v. James*, 996 F.2d 1442, 1450 (2d Cir. 1993) (noting, in the context of deciding whether to raise a procedural default sua sponte in response to a federal habeas claim, that "[j]ustice dictates that [the court] act with greater leniency when determining whether to shut off a defendant's last avenue of hope").

[16] Petitioner likewise distinguishes his case from *Sahin*, noting that he was diligent in pursuing administrative remedies and filed his suit only months after his release, unlike the petitioner in *Sahin*, who was out of custody for over thirteen years before he filed his suit. (Pet'r's Resp. 2–3.)

maintains that he "exhausted every remedy possible that was available while 'in[] custody,'" and that he "had to wait until December of 2013 to complete his federal supervise[d] release to file" his Petition, suggesting that he believed he could not file a petition for coram nobis relief until after he was released.  (*Id.* at 2.)

Ultimately, the question of whether Petitioner's claim is timely turns on the last reason he provided: whether he could have filed for coram nobis relief while he was in custody.[17]  While there is some suggestion that a petitioner can file a coram nobis petition once he has exhausted his options for habeas relief, even while in custody, *see, e.g., Triestman v. United States,* 124 F.3d 361, 380 n.24 (2d Cir. 1997) ("It is possible that [a writ of error coram nobis] might be deemed available if . . . for example, an actually innocent prisoner were barred from making a previously unavailable claim under § 2241 as well as § 2255."); *cf. Kaminski v. United States*, 339 F.3d 84, 90 n.4 (2d Cir. 2003) ("True, the writ has been described as available to petitioners 'no longer in custody.'  But 'no longer in custody' need not mean that the mere *status* of being 'in custody' bars an individual from seeking a writ of coram nobis.  It could just as readily mean that coram nobis cannot be used to challenge *custody*." (citation omitted)), the Second Circuit maintains that coram nobis relief is unavailable to a prospective petitioner until after his or her release from custody.  *See Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014) ("A writ of error coram nobis is an extraordinary remedy, typically available only when . . . the petitioner is no longer in custody." (citation and internal quotation marks omitted)); *Fleming*, 146 F.3d at 89–90 ("Coram nobis is essentially a remedy of last resort for petitioners who are no longer in

---

[17] An individual who has been released from prison, but is subject to supervised release, is still considered "in custody."  *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994); *see also United States v. Brown*, 117 F.3d 471, 475 (11th Cir. 1997) (noting that an individual is in custody when subject to supervised release because "[s]upervised release carries with it the possibility of revocation and additional jail time").

custody pursuant to a criminal conviction . . . ."); *United States v. Travers*, 514 F.2d 1171, 1172 (2d Cir. 1974) (noting that "a motion in the nature of a writ of error coram nobis will lie . . . with respect to a federal felony conviction when the sentence has been fully served"); *accord Ottenwarde v. United States*, No. 12-CV-6537, 2013 WL 1242632, at *5 (S.D.N.Y. Mar. 28, 2013) ("A writ of error coram nobis is only available to a petitioner who is no longer in custody pursuant to the sentence he seeks to attack."); *United States v. Dos Santos*, 979 F. Supp. 949, 951 (E.D.N.Y. 1997) ("[A] prerequisite for [the writ's] use is that the defendant must have completely served his sentence."); *United States v. LaPorta*, 20 F. Supp. 2d 530, 534 (W.D.N.Y. 1998) ("The writ of *coram nobis* is only available 'to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no longer 'in custody' for purposes of [section] 2255.'" (alteration in original) (quoting *United States v. Stoneman*, 870 F.2d 102, 105–106 (3d Cir. 1989))).[18]

    Given that (a) Petitioner believed he could not file for coram nobis relief until he was released, (b) this is a reasonable interpretation of the case law, and (c) Petitioner has otherwise demonstrated a diligent effort to pursue his claims, the Court finds that Petitioner has offered

---

[18] Other circuits agree.  *See Brown*, 117 F.3d at 475 (noting that because "[s]upervised release carries with it the possibility of revocation and additional jail time," the petitioner on supervised release "was in custody within the meaning of § 2255 when he filed his petition in the district court, [meaning] coram nobis relief was unavailable to him"); *United States v. Castro*, 26 F.3d 557, 559 (5th Cir. 1994) ("Writ of coram nobis is an extraordinary remedy available to a petitioner no longer in custody." (citation and internal quotation marks omitted)); *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994) ("The writ of error coram nobis affords a remedy to attack an unconstitutional or unlawful conviction in cases when the petitioner already has fully served the sentence."); *United States v. Woods*, 986 F.2d 669, 676 (3d Cir. 1993) ("To utilize coram nobis, the defendant must have completely served his sentence."); *United States v. Folak*, 865 F.2d 110, 113 (7th Cir. 1988) ("Because [the petitioner] remains in custody, [his] recourse is via § 2255, not coram nobis.").

"sound reasons" for his failure to file for coram nobis relief until last year.  The Petition, therefore, is timely.

    2.  <u>Fundamental Error</u>

Having established that the Petition is timely—the second prong of the standard for coram nobis relief—the Court must consider the first prong, namely whether "there are circumstances compelling" coram nobis relief "to achieve justice."  *Foont*, 93 F.3d at 79 (quoting *Nicks*, 955 F.2d at 167 and *Morgan*, 346 U.S. at 511) (internal quotation marks omitted).  As discussed above, "the power of the [C]ourt . . . to vacate . . . judgments for errors of fact exist[s] . . . [only] in those cases where the errors were of the most fundamental character; that is, such as rendered the proceeding itself irregular and invalid."  *Mayer*, 235 U.S. at 69; *Foont*, 93 F.3d at 78 (same).  Petitioner must demonstrate "extraordinary circumstances" to be entitled to relief, *Nicks,* 955 F.2d at 167, which is an extremely high burden, *see Akinsade*, 686 F.3d at 261 ("The burden of establishing the requirements for coram nobis relief is a very substantial one, described by some jurists as exceeding that of an ordinary habeas petitioner." (italics omitted)); *United States v. Hernandez*, 94 F.3d 606, 613 n.5 (10th Cir. 1996) ("[T]he availability of a writ of coram nobis is extremely circumscribed . . . ." (italics omitted)).

The error Petitioner alleges relates to the surveillance video and associated photos produced at trial.  Petitioner claims that he was not the individual appearing in the video, and that if he had access to a "forensic photogrammetry analysis expert," he would be able to demonstrate that he is actually innocent.  (Pet. 1–2.)[19]  Petitioner also suggests, for reasons that are not clear

---

[19] Petitioner cites several portions of the trial transcript, apparently to provide "example[s]" of when Petitioner could have used an expert report to refute the prosecutor's contention that it was Petitioner in the surveillance video.  (*See* Pet. 2; *id.* Exs. B (ruling on admissibility of surveillance footage), C1 (sustaining objection to prosecutor's request that Petitioner wear a hat), C2 (overruling objection to Petitioner adjusting his collar), D (denial of

from the Petition, that he received ineffective assistance of counsel "before, during[,] and after trial." (Pet. 2.)

The Court finds that Petitioner's claims are without merit. With respect to expert analysis of the surveillance video and photos, the Court agrees with Judge Brieant that expert testimony is not ordinarily necessary to supplement the jury's identification of a defendant based on a picture. *Dixon II*, at 2. *See Darco v. United States*, No. 04-CV-1378, 2005 WL 1804475, at *5 (E.D.N.Y. July 28, 2005) ("[T]he comparison of photographs is something that can be done by a jury without the aid of experts."); *see also United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995) ("[T]he comparison of photographs is something that can sufficiently be done by the jury without help from an expert . . . ."); *United States v. Brewer*, 783 F.2d 841, 842 (9th Cir. 1986) (same). Thus, even if "trial juries make harmful mistakes," (Pet. 2), there was nothing unjust about allowing the jury to compare Petitioner to the video footage without the aid of an expert's analysis, nor does allowing such a comparison constitute "extraordinary circumstances" that justifies coram nobis relief.[20] Moreover, as noted above, the prior proceedings are presumed to

---

motion for new trial).) Petitioner does not explain why—and the Court does not otherwise find that—these transcript excerpts are relevant to the instant Petition.

[20] Even if the Court were to appoint the expert Petitioner requests, any new evidence that Petitioner discovered, (*see* Pet. 2 (indicating that "one particular piece of evidence will over[]shadow and weaken the Government witnesses['] fabricated testimony" and that "[t]here is solid evidence that is in [the possession of] [P]etitioner, [the] FBI, and the United States Attorneys [sic] that will demonstrate [P]etitioner['s] actual factual innocence, that needs to analy[zed] by an expert"), would "not [be] cognizable in a coram nobis proceeding" in the absence of any fundamental constitutional error in the trial. *Foont*, 901 F. Supp. at 736 (quoting *Moody v. United States*, 874 F.2d 1575, 1577 (11th Cir. 1989) (italics omitted)); *see also Foont*, 93 F.3d at 80 ("Claims of new evidence, however, without constitutional or jurisdictional error in the underlying proceeding, cannot support a coram nobis claim."); *Moody*, 874 F.2d at 1577 (noting that a court is required to deny a coram nobis petition that is, "in substance, merely an untimely motion for a new trial based on newly discovered evidence" (citing *Reid v. United States*, 149 F.2d 334, 335 (5th Cir. 1945)); *cf. Herrera v. Collins,* 506 U.S. 390, 404 (1993) (claim of actual innocence based on newly discovered evidence, absent a constitutional violation,

have been conducted correctly, *see Morgan,* 346 U.S. at 512; *Nicks*, 955 F.2d at 167, and

Petitioner has not met his burden of demonstrating otherwise, having only made conclusory

assertions that the evidence will "over shadow [sic] and weaken" allegedly fabricated testimony,

and correct the jury's alleged "mistake[]" in identifying Petitioner.  (Pet. 2.)  Such allegations are

insufficient to justify coram nobis relief.  *See Dennis v. Corcoran*, No. 07-CV-6229, 2010 WL

5072124, at *3 (W.D.N.Y. Dec. 7, 2010) ("A conclusory assertion of a deprivation of

constitutional rights does not state a viable claim for habeas corpus relief.").[21]

       Petitioner also does not allege sufficient facts in his Petition to demonstrate ineffective

assistance of counsel.  Under the standard set forth in *Strickland v. Washington,* 466 U.S. 668

(1984), to establish ineffective assistance of counsel, Petitioner must demonstrate both that his

attorney's performance was constitutionally deficient and that prejudice resulted from the

deficient performance.  *Id.* at 687;  *see also Palacios v. Burge,* 589 F.3d 556, 561 (2d Cir. 2009)

(noting that the "rigorous" *Strickland* standard "requires that a criminal defendant asserting that

counsel is constitutionally deficient must meet both a performance test . . . and a prejudice test . .

. ." (internal quotation marks omitted)).  To establish the deficient performance, Petitioner must

show that "counsel's representation fell below an objective standard of reasonableness."

---

is not grounds for federal habeas relief).  As explained above, because Petitioner has not
adequately alleged any constitutional error here, the Court would be unable to consider any new
evidence that Petitioner obtained.

    [21] Petitioner references the fact that the Government asked him to "'wear a hat'" and that
he "tried to show his three inch scar to the jury," which the Government asked that Petitioner not
do.  (Pet. 2.)  Petitioner does not explain the significance of these facts, though it appears that the
latter relates to an allegation that Petitioner had a scar that predated the robbery that the
individual in the surveillance video did not have.  (*See id.*; *id.* Ex. G (medical records indicating
injury predated robbery).)  In any event, these facts do not establish that the trial was unfairly
conducted.

*Strickland*, 466 U.S. at 688.  To this end, "[u]nder *Strickland,* there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Palacios*, 589 F.3d at 561 (quoting *Strickland,* 466 U.S. at 689).  To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

Petitioner's only ineffective assistance claim is his vague assertion that his attorney was ineffective "before during[,] and after trial," and the equally vague assertion that the Government "was able to avoid arguing" about the identity of the individual in the surveillance footage "with [P]etitioner['s] prior counsel['s] assistance."  (Pet. 2.)  Petitioner does not explain what "assistance" his attorney provided to the Government, or why counsel's performance fell below the "objective standard of reasonableness," particularly given, as indicated above, it was entirely proper to allow the jury to independently determine the identity of the individual in the surveillance video.  Therefore, Petitioner has not overcome the presumption that his attorney's conduct was reasonable, *Palacios*, 589 F.3d at 561, and has failed to demonstrate ineffective assistance of counsel.  *See Skeete v. People of N.Y. State*, No. 03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) (rejecting portion of ineffective assistance of counsel claim because the petitioner "offer[ed] no facts, nor any reference to the record" in support, and made "no more than a vague allegation that 'numerous' violations and errors occurred at [the petitioner's] trial"); *Angel v. Garvin*, No. 98-CV-5384, 2001 WL 327150, at *8 (S.D.N.Y. Apr. 3, 2001) ("A habeas petition may be denied 'where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous.'" (quoting *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970)).

Additionally, Petitioner has failed to demonstrate that his attorney's actions prejudiced his defense.  First, Plaintiff does not explain how his attorney's ineffective assistance permitted the Government to "avoid arguing" about the identity of the individual in the surveillance video such that it prejudiced Plaintiff.  Second, Judge Brieant found that the evidence of Defendant's guilt in this case was strong enough that the identification of Defendant in the video was not crucial to the conviction, suggesting that any failure on counsel's part was not prejudicial.  *See Dixon II*, at 1–2; *Dixon I*, at 3; *cf. Rahman*, 1998 WL 907042, at *1 (noting "the strong evidence of Dixon's guilt," but including the video footage when listing such evidence); *see also Brecht v. Abrahamson,* 507 U.S. 619, 637–39 (1993) (holding that a constitutional trial error does not warrant habeas relief unless the error had a substantial and injurious effect or influence on verdict); *Bentley v. Scully,* 41 F.3d 818, 825 (2d Cir. 1994) (same); *cf. United States v. Holmes*, 620 F.3d 836, 844 (8th Cir. 2010) (noting, in case concerning a petition for coram nobis relief, that "[e]vidence erroneously admitted in violation of the Confrontation Clause is harmless beyond a reasonable doubt as long as the remaining evidence is overwhelming"); *Ocean v. Cunningham*, No. 02-CV-6357, 2003 WL 23185750, at *14 (E.D.N.Y. Oct. 28, 2003), *aff'd*, 120 F. App'x 392 (2d Cir. 2005) (finding that "[a]ny error in the admission of the challenged portion of the testimony of the prosecution's expert in or in the prosecutor's remarks was harmless[] in view of the strong evidence of guilt" (citations omitted); *Murray v. Schultz*, No. 05-CV-472, 2005 WL 1523504, at *18 (S.D.N.Y. June 29, 2005) ("[C]onsidering the strong evidence against [the defendant], the prosecutor's single statement that [the defendant] was an expert drug dealer was unlikely to have swayed the jury towards a guilty verdict.").  In fact, Judge Brieant explicitly found that "[t]he conduct of counsel throughout [the trial] was objectively reasonable," *Dixon I*, at 2, and that Petitioner was not prevented from testifying nor misrepresented by his attorney,

23

*Dixon II*, at 3.  Therefore, Petitioner has failed to demonstrate ineffective assistance of counsel, and, more generally, a "fundamental error" in the proceedings below that compels coram nobis relief.

      3.  <u>Continuing Legal Consequences</u>

Having found that Petitioner failed to meet the fundamental error prong of the standard for coram nobis relief, the Court need not reach the third prong—and second threshold procedural showing—necessary to obtaining coram nobis relief, namely that Petitioner suffered "continuing legal consequences of the petitioner's conviction."  *Porcelli v. United States*, 404 F.3d 157, 158 (2d Cir. 2005).  Nonetheless, the Court also finds that Petitioner has failed to meet this standard.

To demonstrate continuing legal consequences, "[P]etitioner must show a concrete threat of serious harm," as compared to "[s]peculative harms," which are "insufficient to meet this test."  *Id.*; *see also Fleming,* 146 F.3d at 91 (explaining the petitioner's "claim [that he cannot find employment in the financial sector] is purely speculative, and as such we do not think it sufficient to justify invoking the 'extraordinary remedy'").  The harm that Petitioner highlights in his Petition is an inability "to obtain a well benefit [sic] employment or any de[c]ent employment."  (Pet. 3.)[22]  Specifically, Petitioner alleges that Halls Automotive revoked his offer of employment because of his conviction, that he was "removed" from an "Access-A-[R]ide training class" to become a bus driver when New York State learned of his conviction, and that

---

[22] As mentioned above, Petitioner also alleges that he owes restitution in excess of $200,000 resulting from his conviction.  (Pet. 3.)  However, restitution does not qualify as a continuing legal disability, because it is a cost already incurred by Petitioner.  *See United States v. Sloan*, 505 F.3d 685, 697 (7th Cir. 2007) ("[A]n order of restitution is no different than an award of damages in civil litigation.  It is a sunk cost rather than a continuing disability producing additional injury as time passes." (internal quotation marks omitted)).

he cannot obtain a "Class-A" trucking license until ten years have passed since his conviction. (*Id.*).[23]  In his Reply, Petitioner also alleged that "a company name[d] CRST truck denied [him] training and a job . . . with their company in January of 2014 . . . because of [his] conviction," informing Petitioner that he had to be "'13-years clear of [the] conviction'" before he could receive training and become a Class-A "tractor trailer driver."  (Reply 2.)[24]

According to a letter attached to the Petition from Nicole Zeichner, Esq.—an associate of Petitioner's Criminal Justice Act counsel on a "probation-related matter"—Petitioner was employed for nearly a year and a half after being released from prison.  (Pet'r's Dec. 21, 2011 Letter at 1–2.)  Petitioner detailed and transported luxury cars for a Bronx company between June 2010 and October 2011.  (*Id.* at 2)  Petitioner only left this job upon obtaining an offer of employment to perform "similar duties" at Halls Automotive in Virginia, where Petitioner had "personal ties" and the "cost of living would be cheaper."  (*Id.* at 2–3, 5.)  Of note, Petitioner obtained the job in Virginia even after "disclos[ing] that he had a criminal record" because the employer wanted to "'give him a chance,'" and Petitioner had also obtained a temporary place to

---

[23] Petitioner also alleges that he is generally "frighten[ed]" when filling out job applications because they ask if he has ever been convicted.  (Pet. 3.)

[24] The Court notes that where Petitioner's opposition memoranda "are consistent with the allegations contained" in the Petition, they may be read "as supplements to th[e] pleadings." *Boyer v. Channel 13, Inc.*, Nos. 04-CV-2137, et al., 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005); *see also Paul v. Bailey*, No. 09-CV-5784, 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2013) (considering "factual allegations made by [a] pro se [p]laintiff in [the plaintiff's] opposition papers" because they were "consistent with those in the initial complaint and amended complaints" (italics omitted)); *Gertskis v. U.S. E.E.O.C.*, No. 11-CV-5830, 2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20, 2013) (considering allegations from the plaintiff's opposition memoranda "to the extent they are consistent with the [a]mended [c]omplaint"); *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 448 (S.D.N.Y. 2012) ("[B]ecause a pro se plaintiff's allegations must be construed liberally[,] it is appropriate for a court to consider factual allegations made in a pro se plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint." (italics omitted)).

live in Virginia under similar circumstances.  (*Id.* at 3–4).  Unfortunately, according to the letter, and for reasons that the Court does not understand but need not recount in detail, the probation officer to whom Petitioner was assigned in the Eastern District of Virginia convinced Halls Automotive to rescind its offer of employment, and the individual with whom Petitioner was planning to stay to renege on her agreement with Petitioner.  (*Id.* at 4–5).  Afterward, according to the letter, because he could not recover his home or job in the Bronx, Petitioner became homeless.  (*Id.* at 5.)

While the Court empathizes with Petitioner's misfortune, Petitioner's experience indicates that he is capable of obtaining a job as a car detailer and transporter, which appears to be his chosen line of work.  Mere stigma or reputational harm is insufficient to constitute a legal consequence, and Petitioner's ability to obtain such employment while still subject to supervised release suggests that he can overcome the stigma he currently faces as a result of his conviction. *See Fleming,* 146 F.3d at 90 (noting that a "desire to be rid of the stigma" of a conviction is insufficient to establish legal consequences (internal quotation marks omitted)); *cf. Foont*, 901 F. Supp. at 734 (distinguishing case from one where a petitioner complains "simply of reputational harm from the blemish of his prior conviction . . . [or] of diminished job prospects").  Moreover, even if, as Petitioner claims, it is a "poor job economy," (Reply 2), and even if it may be *difficult* for him to find a job, Petitioner's circumstances are distinguishable from the circumstances of those who were suffering continuing legal consequences from their convictions due to their inability to find a job in their chosen professions, *see*, *e.g.*, *Foont*, 901 F. Supp. at 734, because Petitioner here is not completely barred from "returning to his profession," *id.* at 734 & n.2 ("[T]he great majority of released felons face difficulty in convincing prospective employers to overlook their criminal records when making hiring decisions.  This is clearly a collateral

consequence of a conviction, but it is not *legal consequence* of the type specified by the Second

Circuit as a prerequisite to eligibility for coram nobis relief." (italics omitted)).

As far as the other two jobs that Petitioner references in his submissions—driving a bus

or a tractor-trailer—are concerned, Petitioner does not argue that these jobs, rather than detailing

and transporting cars, are his profession.  The mere inability to obtain certain jobs, as compared

to being barred from one's chosen line of work, does not constitute continuing legal harm.

*Compare Foont*, 901 F. Supp. at 734 (holding that a federal statute that barred convicted felons

from working as securities dealers or brokers constituted a legal consequence because it was a

"statutory bar, a legal impediment to returning to [the] profession.") *with United States v. Bush*,

888 F.2d 1145, 1150 (7th Cir. 1989) ("Unwillingness to hire someone for mouth-watering jobs is

not a legal disability . . . . , period.").[25]  Furthermore, it certainly is not as if Petitioner lacks

sufficient qualifications to find employment.  Petitioner has several professional licenses that

may assist him in his employment search, including certifications for "cleaning [and] cleaning

chemicals, [a] class (B) commercial driver['s] license with bus passenger endorsement, [a] class

[(A)] commercial permit, [a] 10 hour[] Osha [sic] construction certification, [a] New York City

---

[25] As far as Petitioner's bus-driving aspirations are concerned, he may be able to obtain a job in the field in the near future.  The letter from the New York State Department of Motor Vehicles attached to the Petition indicates that Petitioner's "disqualification may be waived" after five years have passed since his imprisonment, a condition which Petitioner will meet this year, or if Petitioner obtains a certificate granting "relief from civil disabilities" or certifying "good conduct" under New York State Corrections Law.  (Pet. Ex. I (Letter from Donna P. to Petitioner (Jan. 16, 2014)).)  Therefore, while Petitioner may be temporarily foreclosed from driving a bus, any disability is fleeting such that he may be able to "return[] to [the] profession." *Foont*, 901 F. Supp. at 734.

Moreover, with regard to Petitioner's desire to drive a truck, it appears that the waiting period Petitioner refers to may be specific to the company or companies to which Petitioner applied, suggesting that employment may still be attainable in the field.  (*See* Reply 2 (noting that an attorney is working on "getting this [truck-driving] company to change [its] mind [about] hiring [P]etitioner").)

Consumer [A]ffairs tow truck driver['s] license, and a homeland security clearance identification," (Reply 1), the last of which appears to be a "Transportation Worker Identification Credential," (*see id.* Ex. D). Even considering Petitioner's failed attempts to become a bus driver, it appears that there are several fields that he has not yet pursued in which he may successfully find employment. Therefore, because Petitioner has demonstrated an ability to obtain a job as a car detailer and transporter, is not foreclosed from other forms of employment, and has professional certifications that may assist him in his job search, the Court finds that he is not suffering a continuing legal consequence such that he is entitled to coram nobis relief.

### III.  CONCLUSION

In light of the foregoing, Plaintiff's Motion for Summary Judgment is denied, and the Petition is dismissed. The Clerk of Court is respectfully requested to terminate the pending Motions, (Dkt. Nos. 11, 16), and to close the case.


SO ORDERED.

Dated:      February 26 , 2015
            White Plains, New York

                              KENNETH M. KARAS
                              UNITED STATES DISTRICT JUDGE